24-7086, Avant v. Doke. Council can correct me if I'm wrong on that. Council for appellant, if you'd make your appearance and proceed. Thank you, members of the court. My name is Mark Hammonds. I represent the appellant. It's Avant. Avant? Avant. Avant. Okay. There are essentially three issues on this appeal. One is whether or not the district court correctly dismissed the political association claim. The next is whether or not on reconsideration after this court's decision, second decision on this appeal, the court properly applied the Heffernan defense as a basis for final disposition. And the third issue is whether or not the court was correct in denying the First Amendment retaliation case summary judgment motion. In other words, whether that should go forward assuming the Heffernan defense does not end the case. With regard to the first issue on political association, we relied primarily on Barker v. City of Del City, which sets out just two elements for a political association case. And one is that political affiliation was a substantial or motivating factor in the decision. And then the second is whether or not there was a duty of loyalty associated with this position. Now, counsel, I hate to ask, but is there a preservation problem on appeal here or a waiver problem on appeal with the political association claim? You really develop your arguments in reply more than you do in your opening briefs. Is that a problem for us? Well, I don't think so, Your Honor. I think we did address the essential elements of the political association case. The facts on that are pretty simple. And what we explained on that is that Commissioner Doak, who made the decision, thought that Mr. Avant did not support him. He fired him on his belief that Mr. Avant was repeating a political argument his opponent had made in the race and says that was the principal reason. That and statements attributed to Mr. Avant about the impropriety of working a sex offender close to school resources. And both of those things are factually established within the context of the declarations that Mr. Doak made in his first summary judgment. So it's your position that you've adequately advanced that challenge on appeal? I believe so. What about on the reconsideration issue? In the district court, and I think the district court said as much, you didn't specifically litigate this question of whether Avent II, imported now on remand, affects the Heffernan defense. You didn't advance any arguments about that. And what should we do with that on appeal? We opposed it. We did not devote a separate proposition to the Heffernan defense versus reconsideration and the First Amendment retaliation claim. But both of those issues were premised on only one argument on the part of the defendant of Pelley here. And that is that the lack of a mandate to conduct an investigation required reversal on that basis. And we addressed that specifically at the heart of the argument. We said that order of the 10th Circuit said that it's not a mandate, but it never said it's not relevant to it. And there's plenty of case law that says the failure to conduct an investigation is a fact that can be considered by the trier effect as to the reasonableness of the conclusions that were made. So there is only one argument, one legal argument to reshoot. And we did directly reshoot that. Now, I guess I guess what what on the Heffernan defense, the confusion I have is that at least at two points, it's my understanding in the briefing in this case, you did contest whether the Heffernan defense was viable, but on reconsideration, you did not. And what and I guess what that often leads to is a question of abandonment. In other words, it becomes waiver by virtue of abandonment, because the district court is looking, why aren't you addressing this same argument that you've addressed before? And then the sort of winnowing process of litigation, it's not unheard of that people just drop arguments. And so I'm struggling, what do I do with that? Well, Your Honor, with regard to the arguments that we've made twice previously, yes, where the court had denied the Heffernan defense, he found certain things, which ultimately became the foundation for granting that. But under servants of the Pericles, I believe, we're not supposed to rehash those on reconsideration. If we don't have a new facts or new law on those points, then... Well, you're not the movement on reconsider. I mean, you were responding to a motion to reconsider. And that's true. But as I understand it, if the position is that the court has made a finding that there's a neutral policy and that the defendants were following that policy, and we don't have new facts to argue with regard to that, we're not supposed to rehash the prior argument. I mean, the nature of reconsideration is based upon new facts or new law. And wasn't the argument on reconsideration based on new law, or at least the interpretation of new law? Well, it was on the interpretation of new law, but that is what we addressed in our response. We said, they're claiming that because an investigation is not mandatory, you have to reconsider both the First Amendment ruling and the Heffernan defense. And what we said is, the court's ruling doesn't say that. The court's ruling says an investigation is not mandatory. This court never said that it was irrelevant, that it wasn't something that could be considered. And we set that forth, I think, very clearly. Yes, but they affirmatively raised, again, the Heffernan defense. And so I guess the problem becomes that if, again, servant, to the point that Judge Rossman makes, I mean, that controls what the move-in can bring. It doesn't talk about what you need to respond to. And as things turn out, that became a basis for the court to grant relief. So, I mean, so you're in a posture of they're seeking to raise the defense. You've raised it twice before. Whether they were right to do it or not, that's another issue. Weren't you called upon to address it? Because if you didn't, we're in the posture that we're in now. Well, the only argument that they made with regard to renewing the Heffernan defense was to say the court has previously ruled on these two points, which the court had previously ruled on. The basis for the change is that an investigation is not mandatory. Now, perhaps as a responding party, I could go back and revisit all the arguments that I've made previously with regard to that. But I think it's appropriate to assume that the court is aware of those. That's right. And I don't think, my understanding of the law is not that you had necessarily an obligation as the respondent to the motion for reconsideration to rehash. But if there's a new argument that justifies the existence of the motion for reconsideration, it was an argument based on new law, or at least, again, the interpretation of Avon 2, it seems as though that is new. That very narrow issue is new and would have required a response. And granted, I don't think that it was clear from the motion for reconsideration. There was only one heading. It's not clear that there were two arguments, but there were two arguments. And the district court said we did not directly respond to that argument. The point on that is there was only one argument as to both points, as to reconsideration on the First Amendment claim, which the judge denied, and then as to reconsideration on the Heffernan case. And it was one argument applicable to both. And that is because you don't have to conduct an investigation, therefore we should win. And we directly responded to that one argument that went to both of the issues on it. We explained specifically that the court said you don't have to conduct an investigation. The court never said that the presence or absence of an investigation is irrelevant. We went further and said that the case law within the circuit has pretty much uniformly recognized that the presence or absence of an investigation, the adequacy of the investigation, remains relevant. So I mean, I don't know that there's a more direct response we could make to that one argument. What do you understand the holding in Avon 2 to be? What do you understand the holding of that case to be? The holding of the case was on qualified immunity. It didn't have anything to do with Heffernan, nor did it have anything to do with the First Amendment retaliation case. It was based on qualified immunity, suggesting that because the manner of determining the reasonableness of the decision-maker's belief had not been clearly set out by this court, then the law was uncertain on that issue, which the court deemed to be essential to a qualified immunity defense. And it was under an element of Garcetti Pickering analysis, right? It was pursuant to an element of the Garcetti Pickering analysis, right? That was the focus, would you say? Yes. I guess my question is just to be clear. I'm trying to understand if, assuming we find that you adequately preserve this, what your position on the law is, whether the holding and mandate in Avon 2 has anything at all to do with Heffernan. And the answer is no. And why is that? Because the holding in Avon 2 didn't say anything about Heffernan. It did not address that issue at all. It did not address the propriety of the court's First Amendment retaliation ruling, which said there were sufficient facts on that. It addressed only the issue of qualified immunity. And on the issue of qualified immunity, it made the holding that the standards for determination of a good faith belief were not clearly established. Therefore, the law was not clearly established on that point. But that's not the controlling point on either the First Amendment issue or on Heffernan issue. Okay. So, with regard to the political affiliation issue, what we showed was that Doak thought our client was opposing him, that he was using a statement that he attributed to the opponent's campaign when they had circulated as part of the election. And then he said that that was a primary reason for his termination. Now, he didn't say that it was because of his apparent support, but certainly a jury could draw that reasonable inference. And it's your view, is it not, that the district court misconstrued the nature of the political affiliation claim as resting on his son and his wife, right? That's correct. All right. Well, then, I guess my follow-up is simply, if that's true, and I'm thinking remedy, let's assume we agree with you. Do you think the appropriate thing to do is to remand, to allow the district court to, under the right understanding of your claim, address the summary judgment issue? Yes, Your Honor. That's the norm. This court has often said it's not a fact finder. We'll not make fact findings as an initial matter here. There are exceptions to that, but the norm would be to remand. Now, we did address the variety of reasons why we had always argued that the Heffernan defense did not apply. There is one salient point. It's an affirmative defense. The defendant, therefore, has the burden of proof as to each of the elements of the defense. One of the elements of that defense is plainly that you have to show equal application of it, and the defendant never presented any evidence on that. The court never addressed that element, although it was plainly part of the description of what a Heffernan defense requires. They said that we didn't offer any evidence. That wouldn't be our burden. But as a matter of fact, we presented evidence that of these two statements, one about the coworker with the sex defense, that that was discussed widely among other employees who were not disciplined at all, which at least calls into question whether or not there's an equal application, because it's one of the same issues they're relying on, one of the things that he said he made his final decision on, and we showed that there's at least conflicting evidence that he never cared about that when other employees raised it. I do want to stress, though, one of the critical things is it is their burden. It's their burden to show that there's a neutral policy that meets constitutional standards, that the defendant's actually following that, and that it was equally applied. Do you agree that in Avant 1, a panel of this court sort of looked at the evidence, the record evidence on Heffernan, and said it's insufficient, you can go on and develop the record on that. Yes. What is your position on what happened? In other words, is the state of the on the Heffernan defense today the same as it was before the panel in Avant 1? In my view, yes, and that's one of the things we said when they raised it again on the second summary judgment motion, is that you still have not addressed all of the elements of the Heffernan claim and have not shown that they're established. Now, the one that was not discussed at all with no facts at all was the equal application, which we pointed out at that time, and that simply never has been addressed. There's nothing in the record. There's an explanation that is offered as the attorney's explanation, but there's no testimony, there's no affidavit, there's no, it's simply an argument, and arguments don't suffice for evidence. I've noticed that I've gone over my time, Your Honor. Yes. Thank you. Thank you. Thank you. Good morning, Your Honors. May it please the court. My name is Allison Levine. I represent Commissioner Doak and his individual and official capacity as county commissioner from Muskogee County, Oklahoma. As I'm sure you're aware, this case is now before the Tenth Circuit for the third time. It is clear that the district court has made some missteps during the court course of litigation, but there are two issues with which the district court has absolutely decided correctly, and that is that summary judgment was correctly granted to Commissioner Doak and his individual and official capacities on the political association claim, and that the district court correctly applied the Heffernan defense to the official capacity free speech claim. In terms of, to Judge Rossman's point earlier about AVANT 1, I just want to clarify that the Heffernan defense was not raised in, during summary judgment before AVANT 1. That's because there was no free speech claim at that point. It was only the political association claim, and in fact, the district court denied plaintiff's request to amend his complaint to add the free speech claim. It's still not in the complaint. The request was denied, yet here we are and we have a ruling on the free speech claim. So I just want to make sure that that is clear. In terms of AVANT 2, the AVANT 2 decision did address the Garcetti-Pickering analysis, particularly as it related to the element of public concern, and so what we have here is a situation of not actual speech, but perceived speech. Mr. AVANT has claimed throughout litigation and Commissioner Doak has accepted that that is the claim and not challenged it, that Mr. AVANT did not actually make the speech in question, and what AVANT 2 clarified was that it was not clearly established that the perceived speech was on a matter of public concern. So once AVANT 2 was decided, Commissioner Doak filed a motion to reconsider, which asked for reconsideration of the denial of summary judgment on the official capacity free speech claim. The district court had previously said that there was a requirement to reasonably investigate whether the speech was made and what the content and purpose of the speech was, before terminating someone pursuant to a neutral policy. AVANT 2 held that the district court was incorrect on that, that there was no such requirement. So based on the court's previous finding that there was a neutral policy and that Commissioner Doak was following it when he Mr. AVANT, we requested reconsideration and that was granted. And as you are aware, Mr. AVANT did not respond to that in his response to the motion to reconsider. He let that portion go, even though there were definitely two distinct arguments. Well, it's hard to tell from the motion for reconsideration that there were two distinct arguments. There was one heading and it seemed to focus on an issue that we're not even talking about today. There was one heading. In hindsight, I think we would break that up into two headings, but we were attempting to not rehash all the arguments that were raised before and just succinctly and briefly focus on the change in law after AVANT 2. So the argument was definitely there. The district court recognized that it was there and they decided correctly based on that motion to reconsider. Well, let's assume we agree with you and the plaintiff didn't recognize that the argument was there based on how you formatted it, even if the district court did. How do you proceed on the merits of the issue? Are you asking if? If the issue was raised, he didn't address it, so he's preserved the argument is what I'm saying. Okay, if he is preserved. How we go forward with that. In that case, it's clear that. Well, it's a question of fact, isn't it? Whether that defense has been established? No, I don't think it is. I think it's a matter clear. It's just a matter of law. The Heverman defense, it can be summarized as this. An employer does not violate the First Amendment when he restricts speech in a neutral and constitutional manner. And the three factors to consider are whether the policy exists, whether the supervisor was following the policy and whether the policy was neutral in terms of constitutional standards for me. And the evidence clearly shows that the policy existed. In this case, the policy required employees to exhibit a high degree of personal integrity exhibit respect. I know what the policy was, and I know they're saying that that was the policy that was violated here. What about everybody else? And apparently there was a lot of gossip going on about the sex offender who was living too close to a school. Did anybody else get terminated for that? How was the policy applied? Was it evenly applied? The policy, was it ever applied? That is the issue. This is the first instance of a situation where members of the public have come to Commissioner Doak and complained about the conduct and the speech and the mannerisms of a county employee. So it can't be applied unless somebody complains to Commissioner Doak about it? He can't just know that there's this gossip going on and do something about it? There's a big difference between gossip going around in general and someone taking the time and being so offended and thinking it's about them personally, that they come to a person's employer and say, this is unacceptable. This has to stop. So is it your view that under this notion of equal application that this unique nature of somebody coming to Doak creates a situation where there really are no comparators? In other words, you couldn't say that somebody similarly situated didn't get the same discipline? Correct. That is exactly right. There was nobody else similarly situated. If this had been a situation where in terms of the complaints made by Chad and Chris Rowland about the Oktaha Road events project, if that had been a situation where it was just gossip around the community or gossip around the District 1 barn, that would be one thing. This is an entirely different level. And to this point, none of Commissioner Doak's employees had ever taken it to that level. The actions that were attributed to Mr. Avant were so egregious, it was the first time that Commissioner Doak had encountered that. So Mr. Avant has argued that in order to use the Heffernan defense, we have to establish that we had previously terminated people for the same infraction. But there was never an occasion where this same infraction had occurred. So how have you satisfied the requirement to show equal application to all? No application? Yes. I would say just establishing that this was the diverse instance of behavior of this type is sufficient to satisfy that in this case, because I don't think there's anything in the Duda v. Elder case, which is the case that recognized the Heffernan defense and explained the parameters of it clearly. There's nothing in that which says you can only use the Heffernan defense after you have terminated other employees for the same or similar, equal, comparable, however you want to call it, for the same offenses. So I want to go back to Avent 1, because in your presentation you were clarifying that, well, back then Heffernan wasn't really even in the case yet because of the nature of the claim and query whether the client was going to invoke it. Even with those caveats, though, the panel said the evidence is insufficient to determine if the policy existed, what its contours were, whether Commissioner Doak applied it equally to all, etc., and the party should be permitted to develop the record relevant to this defense if your client chooses to invoke it, right? Yes. So your client chose to invoke it. Yes. And so my question is, is the evidence now the same as it was then when another panel of this Court deemed that it was insufficient? You had an opportunity to develop the record. Right. And in order to prevail as a matter of law, the record needs to only permit us to do one thing in your favor, right? So I want to understand exactly how you developed the record such that these elements all can be decided in your favor as a matter of law. Okay. So prior to Avant 1, what we had submitted in support of summary judgment was just materials in support of the political association claim, which was not related, which did not include the free speech at that time. So the policy had not been submitted to the Court. So in our second motion for summary judgment on the unplanned free speech retaliation claim, we submitted the policy under which Mr. Avant was terminated. And we submitted, we cited to testimony from other employees regarding gossip, Mr. Avant's behavior at work, and also additional affidavits from Mr. Bob Burgess. And what were those affidavits? I didn't exist in Avant 1 times exists now, correct? The policy was in effect the entire time. It was in effect, but it wasn't part of the case. These affidavits that you're describing, what element do they go to for Heffernan? The elements of the Heffernan defense that they go to were the equal application and whether the policy was, well, basically that he was following the policy. And is that evidence of this is the first time this has ever happened? Is that what the? Yes, yes, I believe so. And again, I will note in terms of whether they were, whether Commissioner Doak was following the policy and whether it was on a matter of public concern, Mr. Commissioner Doak did consult with the district attorney, with Mr. Burgess, the supervisor, with the interim supervisor prior to terminating Mr. Avant. And so we've had complaints from two different members of the community about Mr. Avant's behavior. We have the opinion of Commissioner Doak that the, what the gossip was about was not a matter of public concern, but it was instead a personal grievance. That was the opinion of Mr. Mr. Burgess and Commissioner Doak. And they checked with the district attorney to make sure that they were following the policy and that the conduct in question violated that policy. So it was the opinion of five different people. Two from the community, an attorney, and two employees that supervised, actually three, the interim supervisor, Steve DeShazza, was consulted as well. His opinion was that Mr. Avant's work was poor, his attitude was poor, and that if it were up to him, he would recommend termination. So that taken into consideration with the fact that Commissioner Doak and Mr. Burgess did not believe it was a matter of public concern, the Heffernan defense applies. And even if the Heffernan defense does does not apply, because Commissioner Doak and Bob Burgess did not believe that it was a matter of public concern, then he hasn't satisfied, Mr. Avant has not satisfied the Garcetti Pickering analysis. And how is that so? Garcetti, public concern is an objective consideration, right? I think what Avant, too, made clear was that it's not necessarily an objective consideration. That normally in a free speech case, you would look to the form and the content, context of the speech itself to determine what its purpose was and whether it was on a public concern. When you have a perceived speech claim, the opinion that matters was the opinion of the people that claimed to have heard the speech and the supervisor's opinion. Burgess and Doak did not believe that Mr. Avant was trying to bring misconduct to light, but was instead gossiping and airing personal grievances, and that kind of speech is not protected. And it is their understanding of the speech's meaning and intent which determines whether it was on a matter of public concern and whether a constitutional violation occurred. And, I mean, I believe that's what the court in Avant, too, made clear. So, again, there were the opinion... Counsel, before your time is up, I wanted to ask you a question. You challenged the adequacy of the pleadings? Yes. Do you agree that you probably needed to cross a field to make that argument? Yes, and we did not. We had reached a point where, again, we are here for the third time, and at some point the district court made the decision that the claim was out there. I don't think technically, legally it was, but I believe they did their best, the district court did its best to cure that or make up for that in terms of allowing an unplugged claim to go forward, but at the same time allowing our affirmative defense to go forward. I think that essentially canceled each other out. And here we are with a ruling that I think if it went back just on that technical issue of whether the pleadings were adequate, we would be right back to the same summary... Right, but that's... In Avant, too, we didn't have jurisdiction to consider the adequacy of the pleadings argument because it was an interlocutory appeal, and this time we're not considering it either because you didn't cross the field. Is that fair? That is fair. All right, my time is up. If there are no more questions, I'll ask you to affirm the district court's ruling and say thank you. Thank you, counsel. One minute, if you want it, Mr. Adams. To summarize, if they wanted to raise the issue that this was a unique circumstance, therefore they could not have a comparison, there's no evidence of that. Doak didn't say that. There's no fact... That's an argument of counsel only. With regard to the fact that there were two points that Doak considered to be important, and one of them clearly had been developed, and we pointed out had nobody never been punished for that, that's undisputed. It is their burden to set out a factual basis for why any exception or deviation that should take place, and I do have to mention Doak initially conceded that this was a matter of public concern when we asked him about that. We asked him whether or not a report of a criminal activity would be a matter of public concern. He said, yeah, it would be. With regard to the DA, there's no evidence in the record what the DA said, what he was asked, or what information was presented to him, which we pointed out are no responses. Thank you. Thank you, counsel. Case is submitted.